Eugenia Matteodo et al
vs.        Eq.No.7391
Domenico Capaldi et al
October 21, 1926

HAHN, J. Heard on bill, cross bill, answer, replication and issues of fact duly framed.

The complainants seek the reformation of a deed which, it is alleged, through error, mistake or oversight of a scrivener, who drew the same at the request of both parties, gave permanent reciprocal rights of way to the complainants and respondents, the bill setting forth that the agreement between the parties and stated to the scrivener was that these rights of way should exist only so long as it was necessary, through the condition of Gillen street, for respondents in order to obtain egress from their land to cross complainants' land on to Ledge street, a regular highway. Respondents' land at the time of the purchase of the same from complainant and her husband bounded upon complainants' land and a way called Gillen street, and complainants contend that the agreement which was entered into at the time was that said rights or easements giving complainant a right of way over respondents' land to Gillen street and giving respondents a right of way over complainant's land to Ledge street should terminate immediately upon said Gillen street becoming safe and fit for travel.

The reservation of the reciprocal rights of way is contained in warranty deed marked Respondents' Exhibit 2 and reads as follows:

"Also the grantors give the right to pass and repass through on that parcel of land from Ledge street to the grantees' land and also the grantors have a right to pass on the grantees' land from their land to Gillen street and vice versa."

The respondent Domenico Capaldi testified that after agreeing to purchase from complainant and her husband a large tract of land fronting upon Gillen street, described in warranty deed marked Respondents' Exhibit 1, finding that there was no practical method of egress from said land, he brought it to the attention of the complainant and her husband (now deceased) and by reason of said discussion he bought from complainant and her husband the small strip of land, containing 567 square feet, conveyed by the warranty deed marked Respondents' Exhibit 2, both of said parcels being shown upon the plat attached to the bill of complaint. The small lot of land, it is apparent, was not necessary to the enjoyment of the property conveyed by Exhibit 1 and the discussion at the time, as related by said respondent, was that it would be necessary for him to have a right of way to Ledge street. The absolute purchase of this lot of land rather than a reservation of the use of the same until Gillen street became passable, has an important bearing in determining the true state of affairs. Had the need been but temporary, undoubtedly a lease of the same or a right to pass and repass over this particular lot of land would have been ample to protect the respondent, but he purchased the land as a part of the original transaction and denied upon the witness stand that there was any agreement or understanding whatsoever in relation to the reciprocal rights of way being de-

termined at the time when Gillen street should become passable.

A careful consideration of the testimony of all the witnesses and a view of the premises involved, which showed a passageway well defined running over land of complainant and respondent from Gillen street to Ledge street, said passageway being of ample width for vehicles, leads, with other evidence in the case, to the conclusion that there was no reservation made and that the rights of way are permanent. Gillen street, as viewed by the court, is a wide street with an abrupt grade, and while for a portion of the year, when the weather is such that water or snow will not accumulate in large quantities, it is usable and passable, its condition in the winter or spring, after heavy rains and snow, the court can not from the view determine. As viewed on October 7, 1926, it was passable for foot passengers and vehicles.

The right of way, further, is of sufficient width and sufficiently defined and the use was such that the court finds that it was reserved and used not alone for foot passengers but for vehicles. An old gate, erected by respondent and now out of repair but in a position to swing, across the passageway shows that the same was ample in width for the passage of vehicles.

The respondents ask for affirmative relief in the removal of a fence placed across the right of way by complainants, and that they be permanently enjoined and restrained from obstructing in any way with fence, barrier or otherwise said right of way or from interfering in any way with respondents' use thereof either on foot or with vehicles.

While counsel for respondents in his brief has referred to the fact that laches of complainants should also enter into the consideration of the court in the decision of this case, as this is not one of the issues it may merely be considered in so far as it substantiates the position of the respondents in relation to the matters at issue, and it is true that the complainants have not proceeded very promptly to enforce their right to discontinue and terminate the respondents' right of way or to reform the deed.

The evidence leads to the conclusion that complainant and her deceased husband before signing the deed (Respondents' Exhibit 2), knew of its contents, having had the same translated to them, and, according to the testimony of respondent, Domenico Capaldi, having had possession of the deeds a week before execution in order that same might be translated by the complainants' son. There is no evidence that Mariani, the scrivener, now deceased, had any reason to draw the papers in any other manner than as requested, nor is there any satisfactory evidence that he did not read and truthfully translate the contents of them to the parties. That there was no effort to reform the deed until after his death is also an important element in considering the good faith of complainants. All the circumstances together tend to establish the fact that complainant is using her inability to read and write English as a basis for setting aside an act entered into with a full understanding of its effect. The belated effort of complainant to close the passageway after so many years' use may, in part at least, be attributed to the fact that Ledge street, upon which complainant's end of the passageway abuts, is at the present time, as disclosed by the view, an important highway partially given over to business, and land values thereon must have increased substantially since 1912.

The complainant's testimony in some of its aspects is unconvincing, particularly in denying the use of the passageway by respondent for vehicles. He undoubtedly had a horse

and wagon for many years after 1912; was a groceryman and peddler, and had for many years no other method of egress from his own land to any highway excepting over the passageways. Equally unconvincing was the testimony of the witnesses, Cucca and Mancini, tenants of complainant, testifying as to a conversation with respondent during one of the occasions when there was contention over the passageway, in which conversation the witnesses testify that respondent made statement in effect that the right of way was not permanent, thereby, while contending for his own rights, telling these witnesses, tenants and friends of complainants, that he was not entitled to that for which he was contending.

The complainants have not made out a case for relief. The bill should be dismissed. The respondents are entitled to the affirmative relief prayed for in the cross-bill.

A decree to this effect may be entered.

For Complainants: Charles R. Easton.

For Respondents: George F. Troy.